[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (DOCKET ENTRY NO. 108)
The plaintiff, Alice Morris, worked as a members services supervisor for the defendant, Tri-Town Teachers Federal Credit Union, until her termination on October 21, 1997. Prior to her termination, the plaintiff took a leave of absence from work to undergo back surgery. The first surgery took place on June 26, 1997. The plaintiff's doctor wrote a note at the request of Mr. Ritch, the plaintiff's supervisor, that the plaintiff would be out of work for at least four weeks. A second surgery took place on July 17, 1997. During the plaintiff's extended absence from work, the plaintiff and Ritch communicated several times.[1] According to the submissions of the parties, the penultimate communication between the plaintiff and Ritch was in mid-October when she informed Ritch that she would be out for at least another month. Prior to this conversation, in September 1997, the plaintiff's doctor informed the defendant's long term disability insurance carrier that the plaintiff was totally disabled and could not work in any capacity, even sedentary. (Pl. Memo. Opp. Summ. J., Ex. 10.) Ritch, however, was under the impression, in early October, that the plaintiff would soon be able to return to work. (Pl. Memo. Opp. Summ. J., Ex. 16, p. 97.) On October 21, 1997, Ritch terminated the plaintiff by way of written letter. On February 27, 1998, the plaintiff filed a complaint with the Commission on Human Rights and Opportunities (CHRO), which later released jurisdiction. The plaintiff filed her eight-count complaint against the defendant on July 15, 1998.
The defendant now moves for summary judgment on all counts of the complaint on the ground that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. The defendant filed a memorandum in support of the motion together with affidavits, letters and CT Page 8309 excerpts of depositions. The plaintiff has filed a memorandum in opposition to the motion together with affidavits, letters and excerpts of depositions. The defendant subsequently filed a reply memorandum.
Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law. Witt v. St. Vincent's Medical Center,252 Conn. 363, 368, ___ A.2d ___ (2000). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. Serrano v. Burns, 248 Conn. 419, 424,727 A.2d 1276 (1999). The test is whether a party would be entitled to a directed verdict on the same facts. Id. The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Hertz Corp. v. Federal Ins. Co.,245 Conn. 374, 381, 713 A.2d 820 (1998).
 A Count One — Breach of Express Contract
Count one of the plaintiff's complaint alleges a breach of an express contract to terminate the plaintiff only for good cause. The complaint alleges that the plaintiff, upon commencing her employment with the defendant, received a personnel policies and procedures manual, and that manual, together with other written documents, created an express contract. (Pl. Compl. Count One, ¶¶ 10-11.) The complaint further alleges that the defendant breached that contract when it terminated the plaintiff without good cause, and after having authorized her leave of absence due to her illness.
The defendant argues that there was no express, oral or written contract to terminate only for good cause, and that the plaintiff was hired as an at-will employee. In the alternative, the defendant argues that even if there was an express contract, the defendant had good cause to terminate the plaintiff. In response, the plaintiff argues that the personnel manual contained sections on attendance and leave, and grievance procedures. The plaintiff further argues that the defendant modified the manual throughout the years and at the time of the plaintiff's termination, the manual contained a section for "discharge and discipline" that included a policy for progressive discipline. The plaintiff also argues that the actions of her supervisor, David Ritch, amount to an express contract because a letter sent to the plaintiff from Ritch, dated July 30, 1997, indicated that the defendant expected her to return to work. CT Page 8310
Our Supreme Court has summarized the law on this subject as follows:
 "Contracts may be expressed or implied. These terms, however, do not denote different kinds of contracts, but have reference to the evidence by which the agreement between the parties is shown. If the agreement is shown by the direct words of the parties, spoken or written, the contract is said to be an express one. But if such agreement can only be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances, then the contract is an implied one. . . . Whether [a] contract is styled express or implied involves no difference in legal effect, but lies merely in the mode of manifesting assent." (Citations omitted; internal quotation marks omitted.) Boland v. Catalano, 202 Conn. 333, 336-37, 521 A.2d 142 (1987).
It is firmly established that statements in an employer's personnel manual may, under appropriate circumstances, give rise to an express or implied contract between employer and employee. Gaudio v. Griffin HealthServices Corp., 249 Conn. 523, 532, 733 A.2d 197 (1999). Nonetheless, a contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties.Pavliscak v. Bridgeport Hospital, 48 Conn. App. 580, 596, 711 A.2d 747, cert. denied, 245 Conn. 911, 718 A.2d 817 (1998). The mere fact that the employee believed the guidelines constituted a contract does not bind the employer without some evidence that the employer intended to be bound to such a contract. Id.
In the present case, the original personnel manual received by the plaintiff did not contain language that could be construed as an express agreement to employ the plaintiff for a definite term or to terminate the plaintiff only for good cause. (See Def. Memo. Supp. Summ. J., Ex. 1.) However, the defendant has made subsequent modifications to that manual so that it now includes a section entitled "Discharge or Discipline." This new section contains language providing for progressive discipline and termination under certain prescribed circumstances. While there is no express language in the manual that states that an employee can only be terminated for good cause, neither is there language that might suggest that the behaviors listed are not the exclusive behavior for which an employee may be terminated. In the absence of such language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact. Gaudio v. Griffin Health Services Corp., supra, 249 Conn. 533. CT Page 8311
Although the defendant argues that the "discharge and discipline" revision did not apply to the plaintiff because it was not part of the plaintiff's original manual, that argument is misplaced. Ordinarily, for the new manual to have modified the preexisting terms of employment, the plaintiff must have consented to that modification. Torosyan v.Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 17, 662 A.2d 89
(1995). However, when an employer issues an employment manual that confers on an employee greater rights than he or she previously had, the employee's continued work for the employer thereafter ordinarily demonstrates that the employee has accepted that offer of new rights. Id. at 18. The new manual may well have conferred additional rights upon the plaintiff that she would only be terminated for good cause. Because the contract does not expressly so state, whether the parties intended the new provision to be an express contract that the plaintiff would be terminated only for good cause is a genuine issue of material fact for the trier of fact to determine. Therefore, the court must deny the defendant's motion for summary judgment as to count one.
 B Count Two — Breach of Implied Contract
Count two of the plaintiff's complaint alleges that the actions and conduct of the defendant through Ritch created an implied contract that the plaintiff would only be terminated for good cause. The complaint further alleges that the defendant breached the implied contract when it terminated the plaintiff without good cause after an extended leave of absence. The defendant argues that the plaintiff was an at-will employee, and that there is no genuine issue of material fact because the actions of Ritch did not give rise to an actual agreement between the parties that the plaintiff would be terminated only for good cause. In response, the plaintiff argues that Ritch authorized her leave of absence and continually expressed that he was keeping her position open until her return.[2] The plaintiff further argues that the personnel manual also gives rise to an implied contract.
All employer-employee relationships not governed by express contracts involve some type of implied contract. See Torosyan v. BoehringerIngelheim Pharmaceuticals, Inc., supra, 234 Conn. 13. Torosyan is instructive regarding the parameters of such contracts:
 "Typically, an implied contract of employment does not limit the terminability of an employee's employment but merely includes terms specifying wages, working hours, job responsibilities and the like. Thus [a]s a general CT Page 8312 rule, contracts of permanent employment, or for an indefinite term, are terminable at will." (Internal quotation marks omitted.) Id., 14. "Pursuant to traditional contract principles, however, the default rule of employment at will can be modified by the agreement of the parties. . . . Accordingly, to prevail on the . . . [breach of implied contract] . . . the plaintiff had the burden of proving by a fair preponderance of the evidence that [the employer] had agreed, either by words or action or conduct, to undertake [some] form of actual contractual commitment [that the plaintiff] could not be terminated without just cause." (Citations omitted; internal quotation marks omitted.) Id., 14, 15.
In the present case, the intent and motive of Ritch's actions will determine whether an implied contract to terminate the plaintiff only for good cause was agreed on by the parties. Our Supreme Court has held that:
 "issues of motive, intent and good faith are not properly resolved on a motion for summary judgment. . . . [H]owever . . . even with respect to questions of motive, intent and good faith, the party opposing summary judgment must present a factual predicate for his argument in order to raise a genuine issue of fact." (Citations omitted; internal quotation marks omitted.) Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 250, 618 A.2d 506 (1992).
On July 30, 1997 the defendant wrote the plaintiff a letter that stated that the defendant was holding open the plaintiff's position and would see her when she returned to work. This letter, in conjunction with the personnel manual and the conduct of the defendant in dealing with the plaintiff in the past, presents a factual predicate for the plaintiff's argument that an implied contract existed between the parties. Consequently, on this record there is a genuine issue of material fact as to the motive and intent of the defendant. Therefore, this court is compelled to deny the defendant's motion for summary judgment as to count two.
 C Count Three Breach of Implied Covenant of Good Faith and Fair Dealing
CT Page 8313
Count three of the plaintiff's complaint alleges that the defendant failed to fulfill the plaintiff's reasonable and justified expectations concerning the employment contract. The defendant argues that the plaintiff, as an at-will employee, must allege that her termination violated some important public policy. The defendant further argues that because the plaintiff failed to make such an allegation, there is no genuine issue of material fact and it is entitled to judgment as a matter of law on count three. In response, the plaintiff argues that there is evidence to show that the defendant acted in bad faith because Ritch consulted an attorney prior to terminating the plaintiff.
It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. Hoskinsv. Titan Value Equities Group, Inc., 252 Conn. 789, 793, ___ A.2d ___ (2000). In the context of at-will employment, however, the reason for discharge must involve an impropriety derived from an important public policy. See Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 572,479 A.2d 781 (1984). In the present case, count three fails to allege that the plaintiff's termination violated an important public policy. Nonetheless, a genuine issue of material fact exists as to whether the defendant breached an implied covenant of good faith and fair dealing if there was an express or implied contract and if the defendant terminated the plaintiff without good cause. The question of whether the defendant had good cause to terminate the plaintiff is one for the trier of fact to determine. See Gaudio v. Griffin Health Services Corp., supra,249 Conn. 539-40. Therefore, this court must deny the motion for summary judgment because a genuine issue of material fact exists for the reasons already expressed as to whether the plaintiff was an at-will employee.
 D Count Four — Promissory Estoppel
Count four of the plaintiff's complaint alleges that the plaintiff reasonably relied on the words and actions of the defendant to her detriment by taking a leave of absence to undergo surgery and by foregoing other employment. The defendant argues that there was no clear and definite promise on which the plaintiff relied. In response, the plaintiff argues that she relied on the defendant's authorization of her extended leave of absence when she took the leave and did not pursue other employment.
An essential element of promissory estoppel is action or forbearance on the part of an employee as a result of a promise made by an employer. SeeD'Ulisse-Cupo v. Board of Directors of Notre Dame High School, CT Page 8314202 Conn. 206, 213, 520 A.2d 217 (1987). In the present case the plaintiff has failed to provide a factual basis for her assertion that she relied on any statement made by the defendant. To the contrary, the plaintiff's deposition shows no reliance:
 "Q. Fair enough. What I'm asking is, when you decided to take the leave of absence to undergo surgery, was your understanding that you would not be terminated without just cause a factor in your decision?
"A. To have surgery? No. That was not a factor.
 "Q. You would have taken a leave of absence to undergo surgery under any circumstances?
"A. I had to.
 "Q. Okay. Foregoing other employment opportunities to remain employed with the defendant. What other employment opportunities did you ever have during your career while you were employed at the credit union?
"A. I never really looked around."
(Def. Rep. Memo. Supp. Summ. J., Ex. B, Alice Morris Depo. p. 244, lines 13-25.)
Based on this record, clearly the plaintiff did not rely on a promise because she stated in her deposition testimony that she would have taken the leave regardless. The plaintiff has failed to proffer any evidence to contradict her own deposition testimony. The court is therefore constrained to grant the defendant's motion for summary judgment as to count four.
 E Count Five — Negligent Infliction of Emotional Distress
Count five of the plaintiff's complaint alleges that the defendant owed a duty of care to the plaintiff to act in a non-negligent manner and that the defendant breached that duty through its words and conduct when it terminated the plaintiff. The complaint further alleges that the defendant knew or should have known that there was a substantial likelihood that its conduct would cause the plaintiff emotional distress. The defendant argues that there is no genuine issue of material CT Page 8315 fact because the plaintiff cannot show that the defendant acted unreasonably during the termination process. The defendant further argues that it is entitled to judgment because a mere termination, even where wrongful, does not support a claim for emotional distress. In response, the plaintiff argues that the defendant was aware that the plaintiff has recently undergone two major surgeries and that she was eager to return to work.
One of the leading cases on this subject holds that:
 "[N]egligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even where wrongful, does not transgress the bounds of socially tolerable behavior." (Citations omitted; internal quotation marks omitted.) Parsons v. United Technologies Corp., 243 Conn. 66, 88-89, 700 A.2d 655
(1997).
Using the principles enunciated in Parsons, it is clear that the plaintiff has failed to present any facts which give rise to an inference of unreasonable conduct during the termination process. The plaintiff has alleged only that she was terminated by way of letter without just cause after the defendant consulted an attorney. The mere fact that termination by letter after consultation with an attorney occurred appears to this court to be consistent with the Parsons "mere termination" principal recited above. Id. Consequently, for the foregoing reasons, this court must grant the defendant's motion for summary judgment as to count five.
 F Count Six — Negligent Misrepresentation
Count six of the plaintiff's complaint alleges that the defendant misrepresented crucial facts of her employment when it granted her leave of absence. The defendant argues that there was no representation that the plaintiff would be terminated only for good cause, and because that is the basis for the plaintiff's negligent misrepresentation claim, there is no genuine issue of material fact. In response, the plaintiff argues that the defendant represented to the plaintiff, through its words and actions, that the plaintiff would be able to return to her job after her extended leave of absence, and that the plaintiff relied on those false CT Page 8316 statements.
Connecticut recognizes a cause of action for negligent misrepresentation in the employment context when a declarant makes a false statement of fact on which another justifiably relied. SeeD'Ulisse-Cupo v. Board of Directors of Notre Dame High School, supra,202 Conn. 218.
Although there may be an issue of fact as to whether the representations that were made were false, there is no genuine issue of material fact as to whether the plaintiff relied on them. As stated in part II D of this memorandum, the plaintiff has not presented any evidence that she relied on any statements or representations made by the defendant when she took an extended leave of absence, or that she relinquished other employment opportunities. Therefore, the defendant is entitled to judgment as a matter of law because the plaintiff cannot prove on this record that she relied on any false information that may have been supplied to her. Consequently, the defendant's motion for summary judgment as to count six is granted.
 G Count Seven — Age Discrimination
Count seven of the plaintiff's complaint alleges that the defendant terminated the plaintiff and failed to hold open her position because of her age in violation of General Statutes § 46a-60. The defendant argues that it is entitled to judgment as a matter of law because the plaintiff cannot prove that she was able to perform her duties. In response, the plaintiff argues that a genuine issue of material fact exists as to whether the proffered reason for the plaintiff's termination was pretextual.
General Statutes § 46a-60 (a) provides in pertinent part: "It shall be a discriminatory practice in violation of this section: (1) For an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need . . . to discharge from employment any individual or to discriminate against him . . . because of the individual's . . . age . . . or physical disability . . ."
In a discrimination case, the plaintiff bears an initial burden of establishing a prima facie case of discrimination. See Levy v. Commissionof Human Rights and Opportunities, 236 Conn. 96, 105-08, 671 A.2d 349
(1996).[3] Often, a plaintiff cannot prove directly the reasons that motivated an employment decision. Nevertheless, a plaintiff may establish a prima facie case of discrimination through inference by presenting CT Page 8317 facts that are sufficient to remove the most likely bona fide reasons for an employment action. Id.
The plaintiff's burden of establishing a prima facie case is not an onerous one. The plaintiff need only prove four elements by a preponderance of the evidence. Levy v. Commission of Human Rights andOpportunities, supra, 236 Conn. 107. Relying on Levy, a Superior Court held:
 "[W]e have previously tailored the four elements of a McDonnell-Douglas prima facie case to permit a plaintiff in a non-reduction in force case to make a prima facie showing of age discrimination without establishing that she was replaced by a younger employee. . . . [The] [p]laintiff can establish a prima facie case by showing that (1) she was in the protected age group; (2) she was qualified for the job; (3) she was discharged; (4) the discharge occurred under circumstances giving rise to an inference of age discrimination." Denault v. Connecticut General Life Insurance Co., Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 050418 (June 29, 1999, Corradino, J.).
In the present case, the plaintiff asserts that she was fifty-seven years old (d/o/b 8/7/40) at the time of her termination and, therefore, was a member of a protected class. The defendant does not dispute this, and therefore, plaintiff's age is not at issue. The plaintiff, however, must also bring forth evidence to show that she was qualified for her position. On this factor, the plaintiff has failed to carry her burden. The plaintiff has submitted documentation from her treating physician which unequivocally shows that she was totally disabled and unable to perform even sedentary work for an indefinite period of time. (Pl. Memo. Opp. Summ. J., Ex. 10.) There is no dispute as to the fact that the plaintiff was unable to work.[4] Indeed, the plaintiff is adamant that she could not perform her duties because she was disabled. (Def. Memo. Supp. Summ. J., Alice Morris Depo. pp. 151, 153.) The plaintiff has failed to submit evidence that shows that she was able to perform her duties.[5] Accordingly, defendant's motion for summary judgment as to the seventh count is granted.
 H Count Eight — Disability Discrimination
CT Page 8318
Count eight of the plaintiff's complaint alleges that the defendant terminated the plaintiff on the basis of her disability and failed to hold open her position because of her disability. The defendant argues that like her age discrimination claim, the plaintiff is unable to prove her prima facie case against the defendant because the plaintiff cannot prove that she was able to perform the essential functions of her job. In response, the plaintiff argues that "discrimination" includes failure to make reasonable accommodation.
The McDonnell Douglas-Burdine analysis applies to disability discrimination. See generally, Ann Howard's Apricots Restaurant v. CHRO,237 Conn. 209, 224-28, 676 A.2d 844 (1996). As discussed in Part II G of this memorandum, the plaintiff must prove that she can perform the essential functions of her job as part of her initial prima facie case. As already indicated above, the plaintiff has failed to put forth any facts to show that she was able to perform the essential functions of her job. Notably, in her brief the plaintiff recites the law as to reasonable accommodation, but fails to argue the facts of her case as they relate to her ability to perform her job with or without accommodation. Here again, the plaintiff is resolute that she could not work because of her disability. The plaintiff also contends that the defendant terminated her. Notwithstanding, these two facts do not amount to a disability claim. The plaintiff must put forth evidence that shows a genuine issue of material fact as to whether she was able to perform the essential duties of her job. The plaintiff has failed to carry her burden. In the absence of such proffer, the court must grant the defendant's motion for summary judgment as to count eight.
 Conclusion
Based on the foregoing reasons, the court hereby DENIES summary judgment as to counts one, two and three, and GRANTS summary judgment as to counts four, five, six, seven and eight.
MELVILLE, J.